WALTER J. ROTHSCHILD, Judge.
In this worker’s compensation case, claimant appeals from a summary judgment rendered in favor of the employer. For the reasons stated herein, we reverse the summary judgment and remand the case to the trial court for further proceedings.
Walter Graham began working for Am-eristeel as a forklift operator on May 4, 1984. In August of 2002, Graham filed a disputed claim for compensation asserting that he was disabled from continuing his employment due to an aggravation of asthma brought on by work conditions. Graham contends that his condition constitutes an occupational disease, and that he is entitled to weekly compensation benefits and medical expenses pursuant to the provisions of La. R.S. 28:1031.1.
Ameristeel filed an answer to this claim, denying Graham’s allegations and disputing whether he suffered a compensable accident or injury. Ameristeel also filed an exception of prescription on the basis that Graham had been diagnosed with a breathing problem several years prior to the filing of the claim in this case. Graham opposed this exception, arguing 13that pursuant to the occupational disease statute, plaintiffs claim does not arise until the disease manifests itself. In this case, plaintiff was not diagnosed with acute asthma until April of 2002, and his claim was timely filed within the established prescriptive period. The worker’s compensation judge evidently agreed, and Am-eristeel’s exception of prescription was denied.
Thereafter, Ameristeel filed a motion for summary judgment on the basis that there were no genuine issues of material fact as to whether Graham was entitled to compensation and that Ameristeel was entitled to judgment as a matter of law dismissing the claim. Ameristeel attached to its motion copies of depositions of claimant as well as claimant’s treating physician, and contends that claimant failed to prove that his asthma was contracted or caused by his employment with Ameristeel.
Graham opposed this motion for summary judgment, contending that the medical testimony of his treating physician clearly establishes a causal link between the conditions of his employment and his disabling disease. The trial court heard argument in this matter on August 22, 2003. By judgment dated August 29, 2003, the worker’s compensation judge granted Ameristeel’s motion for summary judgment, dismissing the claims of Walter Graham with prejudice. No reasons for judgment were assigned. It is from this judgment that claimant, Walter Graham, now appeals.
*96 Pursuant to La. C.C.P. art. 966, summary judgment should be granted if there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he or she will be able to | ¿satisfy his or her evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. La. C.C.P. art. 966 C.
Ameristeel contends that there was no evidence submitted to prove that the claimant’s asthma was contracted at his employment. The employer relies on claimant’s deposition testimony in which he admits that he had breathing problems for years, and that events other than his employment cause him to have breathing problems. Ameristeel also relies on the deposition testimony of claimant’s treating physician who was unable to state how claimant contracted his asthmatic condition.
Dr. Scott Pethke, a pulmonologist, began treating Graham when he presented to the hospital emergency room in August of 2001. A copy of his deposition is contained in the record. Dr. Pethke noted that Graham had a fifteen year history of asthma which was medically treated, and that he had two severe asthma attacks during this time period. In August of 2001, Graham was evaluated and diagnosed with respiration failure secondary to status asthmati-cus.
Following his discharge from the hospital on August 25, 2001, Graham was seen by Dr. Pethke in his office on several occasions. Graham and his wife related to Dr. Pethke during office visits that he had more difficulty with his breathing in association with his workplace. Graham returned to work on September 18, 2001, but his asthmatic condition did not improve to the satisfaction of Dr. Pethke. Between this time and February of 2002, Graham continued to have episodes of exacerbation of asthma. On February 26, 2002, Dr. Pethke recommended that Graham have a trial period away from work to see if that would alleviate some of his asthmatic symptoms. Dr. Pethke’s records indicate that Graham’s condition improve d | ¡-.during this period, except for one instance when cutting the grass caused him to have an asthma attack. Dr. Pethke’s notes also show that Graham took six weeks off of work in March and April of 2002, and during this time Graham related that he had been feeling much better since leaving his work environment.
Dr. Pethke noted that after Graham stopped working, the office visits with Graham continued to decrease. This indicated to Dr. Pethke that “his asthma symptoms were either not present or they were much better controlled after the time that he stopped working.” Dr. Pethke stated that this led him to believe that there was a causal relationship between these symptoms and the work environment. In Dr. Pethke’s opinion, if Graham returned to his workplace, he would be risking hospitalization or even death.
On cross-examination, Dr. Pethke noted that although medical science cannot determine the cause of a patient’s asthma, it is possible that Mr. Graham’s workplace environment caused and subsequently exacerbated his asthma. Dr. Pethke opined that this was a case of occupational asthma in that the symptoms of asthma were either caused or exacerbated by exposure to something in the workplace. Dr. Pethke stated:
*97 I think that Mr. Graham’s workplace was a specific trigger, and it was a specifically tricky trigger for him. It’s easy enough to avoid perfume, it’s easy enough to avoid cigarette smoke in many situations. You know, to avoid those areas is a conscious choice, to avoid exercise if exercise is your trigger.
That’s where he worked. The only way for him to avoid his workplace is to not work there. So, I mean, there is a fine line between occupational asthma or he has asthma and these are his triggers. This one specific trigger is his workplace and is related to his occupation. If you want to call it occupational asthma based on that, okay. My point is that he has asthma, he had a significant trigger in his workplace that in my estimation if he continued to be exposed to that trigger, he would be at increased risk for further asthmatic exacerbations, further hospitalizations, and perhaps death.
|6La. R.S. 23:1031.1 provides in part that every employee who is disabled “because of the contraction of an occupational disease ... shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.” The employer argues that because Dr. Pethke is unable to state that Mr. Graham initially “contracted” asthma as a result of his employment, he is not entitled to compensation. We do not agree.
In this case, claimant stated that his job as a forklift operator required him to encounter dust from the steel mesh at the Ameristeel facility. He and his wife both stated that this condition caused an exacerbation of his asthmatic condition which was significantly relieved when he stopped working. Although Dr. Pethke was unable to state how claimant contracted asthma, he stated rather strongly that claimant’s work environment severely exacerbated this condition, rendering him unable to continue with this employment. This testimony clearly established a causal relationship between claimant’s work environment and his asthmatic condition.
After a careful review of the record in this matter, we find that there remains an issue of fact as to whether claimant’s asthmatic condition constitutes an occupational injury within the meaning of La.. R.S. 23:1031.1. Under the facts of this case, we cannot state as a matter of law that claimant’s condition is not compensable under the statute. Therefore, summary judgment was not properly granted in this case.
For the reasons assigned herein, the judgment of the trial court is vacated. The case is further remanded to the trial court for further proceedings. Ameristeel is to bear all costs of this appeal.

REVERSED AND REMANDED.